1
David Aronoff (SBN 125694)
daronoff@foxrothschild.com

2
Jeffrey Grant (SBN 218974)
jgrant@foxrothschild.com

3
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300

4
Los Angeles, CA 90067-1506
Telephone:    310-598-4150

5
Facsimile:    310-556-9828

6
Jaemin Chang (SBN 232612)
jchang@foxrothschild.com

7
FOX ROTHSCHILD LLP
345 California Street, Suite 2200

8
San Francisco, CA 94104-2734
Telephone:    415-364-5540

9
Facsimile:    415-391-4436

10
Attorneys for Defendants
Zorro Productions, Inc. and John Gertz

11

12
UNITED STATES DISTRICT COURT

13
NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

14

15
ROBERT CABELL,

16
            Plaintiff,

17
    v.

18
ZORRO PRODUCTIONS, INC. and JOHN
GERTZ, and STAGE ENTERTAINMENT

19
LICENSED PRODUCTIONS,

20
            Defendants.

21

22

23

24

25

26

27

28

Case No.: 15-CV-00771-EJD

Judge: Honorable Edward J. Davila

**NOTICE OF MOTION AND MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS* AND UNDER FED. R. CIV. P. RULE 12(b)(6) OF DEFENDANTS ZORRO PRODUCTIONS, INC. AND JOHN GERTZ; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: 7/9/2015
Place: Courtroom 4
Time:  9 a.m.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. PROCEDURAL BACKGROUND ...................................................................... 3

III. FACTS RELATING TO *FORUM NON CONVENIENS* ................................. 4

IV. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ............................ 6

V. FACTS SUBJECT TO JUDICIAL NOTICE ...................................................... 8

VI. ARGUMENT:  THE FAC SHOULD BE DISMISSED ..................................... 10

    A. CABELL'S CLAIMS SHOULD BE DISMISSED ON THE
       GROUNDS OF *FORUM NON CONVENIENS* ................................. 10

        1. GERMANY IS AN ADEQUATE FORUM ................................. 10

        2. THE PRIVATE FACTORS FAVOR DISMISSAL ...................... 11

        3. THE PUBLIC FACTORS FAVOR DISMISSAL ....................... 12

    B. THE INDIVIDUAL CLAIMS OF THE FAC MUST BE DISMISSED FOR
       FAILURE TO STATE A CLAIM ................................................... 12

        1. CLAIM ONE – COPYRIGHT INFRINGEMENT: THE FAC FAILS TO
           ALLEGE FACTS TO SUPPORT ITS CONCLUSION REGARDING
           INFRINGEMENT ................................................................... 13

        2. CLAIM TWO – DECLARATORY RELIEF: CABELL FAILED TO
           SATISFY THE REQUIREMENT OF A JUSTICIABLE "CASE OR
           CONTROVERSY" ................................................................. 15

        3. CLAIM THREE – INJUNCTIVE RELIEF: A REQUEST FOR
           INJUNCTIVE RELIEF IS NOT A COGNIZABLE CLAIM ...................... 17

        4. CLAIM FOUR – TRADEMARK CANCELLATION: CABELL'S
           CLAIM FOR TRADEMARK CANCELLATION IS TIME BARRED
           AS A MATTER OF LAW ................................................................ 17

        5. CLAIMS FIVE AND SIX – TORTIOUS INTERFERENCE AND
           FRAUD: CABELL'S TORTIOUS INTERFERENCE AND FRAUD
           CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE AND
           FAIL TO ALLEGE CAUSATION AND INJURY TO CABELL ............... 19

        6. CLAIM SEVEN – WASHINGTON CONSUMER PROTECTION ACT:
           CABELL'S CPA CLAIM FAILS TO ADEQUATELY ALLEGE A
           PUBLIC INTEREST ................................................................ 20

VI. CONCLUSION ................................................................................................ 21

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Aluminium v. Hunter Engineering Co.,*
5     655 F.2d 938 (9th Cir. 1981) ...................................................................................15

6

*ASARCO, LLC v. Union Pac. R. Co.,*
    765 F.3d 999 (9th Cir. 2014) ...................................................................................13
7

*Ashcroft v. Iqbal,*
8     556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................... *passim*

9

*Baker v. Spokane Sav. Bank,*
10     71 F.2d 487 (9th Cir. 1934) .....................................................................................19

11 *Beauty Time, Inc. v. VU Skin Systems, Inc.,*
    118 F.3d 140 (3d Cir. 1997) ....................................................................................18

12

*Bell Atlantic Corp. v. Twombly,*
13     550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................... *passim*

14 *Berkic v. Crichton,*
15     761 F.2d 1289 (9th Cir. 1985) .................................................................................14

16 *BP Chems. Ltd. v. Union Carbide Corp.,*
    4 F.3d 975 (Fed. Cir. 1993) .....................................................................................16
17

*Cat Tech, LLC v. Tubemaster, Inc.,*
18     528 F.3d 871 (Fed. Cir. 2008) .................................................................................16

19 *Cavalier v. Random House, Inc.,*
20     297 F.3d 815 (9th Cir. 2002) ...................................................................................14

21 *Conerly v. Westinghouse Electric Corp.,*
    623 F.2d 117 (9th Cir. 1980) ...................................................................................19
22

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,*
23     918 F.2d 1446 (9th Cir. 1990) .................................................................................11

24 *Creative Technology, Ltd. v. Aztech System PTE, Ltd.,*
    61 F.3d 696 (9th Cir. 1995) ...............................................................................10, 12
25

26 *Curtis v. Option One Mortg. Corp.,*
    2010 WL 599816 (E.D. Cal. 2010) .........................................................................17

27

*Cutler v. Enzymes, Inc.,*
28     2009 WL 482291 (N.D. Cal. Feb. 25, 2009) ......................................................13, 15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)................14

*Funky Films, Inc. v. Time Warner Ent't Co.*,
  462 F.3d 1072 (9th Cir. 2006) ................14

*Goodyear Tire & Rubber, Co. v. Releasomers, Inc.*,
  824 F.2d 953 (Fed. Cir. 1987)................16

*ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*,
  785 F. Supp. 854 (E.D. Cal. 1992)................10, 12

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ................17, 18

*K-Lath v. Davis Wire Corp.*,
  15 F. Supp. 2d 952 (C.D. Cal. 1998) ................15

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................13

*Lockman Foundation v. Evangelical Alliance Mission*,
  930 F.2d 764 (9th Cir. 1991) ................10, 11, 12

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ................12

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)................15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................13

*New Name, Inc. v. Walt Disney Co.*,
  2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ................14, 15

*Official Airline Guides, Inc. v. Goss*,
  6 F.3d 1385 (9th Cir. 1993) ................17, 18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  695 F.3d 946 (9th Cir. 2012) ................18

*Reed v. United Transp. Union*,
  488 U.S. 319, 109 S. Ct. 621, 102 L. Ed. 2d 665 (1989) ................17

*Sams v. Yahoo Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ................13

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
  363 F.3d 1361 (Fed. Cir. 2004) ................16

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...........................................................................13

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ..........................................................................17

*Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*,
    655 F.2d 938 (9th Cir. 1981) ............................................................................15

*Sony Pictures Ent't, Inc. v. Fireworks Ent't Group, Inc.*,
    137 F. Supp. 2d 1177 (C.D. Cal. 2001) .........................................................6, 9

*Sony Pictures Ent't Inc. v. Fireworks Ent't Group, Inc.*,
    2002 WL 32387901 (C.D. Cal., Nov. 05, 2002)................................................6

*Tristar Pictures, Inc. v. Del Taco Inc.*,
    59 U.S.P.Q.2d 1091 (C.D. Cal. 1999)................................................................6

*Universal Surface Tech., Inc. v. Sae – A Trading Am. Corp.*,
    2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ..............................................13, 15

**California Cases**

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 63 P.3d 937, 131 Cal. Rptr. 2d 29 (2003) ...........................20

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979, 102 P.3d 268, 22 Cal. Rptr. 3d 352 (2004) ...........................20

*Rubin v. Green*,
    4 Cal. 4th 1187, 847 P.2d 1044, 17 Cal. Rptr. 2d 828 (1993) .........................19

**Other State Cases**

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778, 719 P.2d 531 (1986).........................................................21

**Federal Statutes**

17 U.S.C. § 102(b) ...................................................................................................14

28 U.S.C. § 2201 .....................................................................................................15

Fed. R. Civ. P. Rule 12(b)(1) ..................................................................................15

Fed. R. Civ. P. Rule 12(b)(2) ...............................................................................1, 3

Fed. R. Civ. P. Rule 12(b)(6) .........................................................................*passim*

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

**California Statutes**

California C.C.P.
    § 338(d)..............................................................................................9, 18

Cal. Civil Code 47(b)........................................................................................20

**Other State Statutes**

Revised Code of Washington 19.86 *et seq.* .......................................................21

Washington Consumer Protection Act..........................................................3, 8, 21

**Other Authorities**

3 M. & D. Nimmer, *Nimmer on Copyright* § 9.11[A] ...........................................6

5 M. & D. Nimmer, *Nimmer on Copyright* § 17.03..............................................10

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

<u>**NOTICE OF MOTION AND MOTION**</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 9, 2015 at 9:00 a.m., or as soon thereafter as may be heard, in the courtroom of the Honorable Edward J. Davila, located at Courtroom 4 of the United States Courthouse at 280 South First Street, San Jose, California 95113, defendants Zorro Productions, Inc. and John Gertz ("the ZPI Defendants") will and hereby do move this Court to dismiss the First Amended Complaint ("FAC") of plaintiff Robert Cabell ("Cabell") pursuant to Fed. R. Civ. P. Rule 12(b)(6) and on the grounds of *forum non conveniens*.  The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the currently-filed Request for Judicial Notice and Declaration of John Gertz, the exhibits and [Proposed] Order submitted herewith, all of the pleadings, files, and records in this proceeding, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion seeks dismissal of the FAC, and each individual claim alleged therein, (1) on the grounds of *forum non conveniens* because of parallel litigation concerning events in Germany that is pending between the same parties in Germany; and, (2) under Rule 12(b)(6), because the FAC fails to allege viable claims for relief against the ZPI Defendants.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This case recently was transferred to this Court by the U.S. District Court for the Western District of the State of Washington after it granted the Motion to Dismiss of defendants Zorro Production Inc. ("ZPI") and its president John Gertz ("Gertz") (collectively "the ZPI Defendants") pursuant to Fed. R. Civ. P. Rule 12(b)(2) because of the lack of personal jurisdiction, without ruling on their alternate grounds for dismissal pursuant to Fed. R. Civ. P. Rule 12(b)(6) and on the basis of *forum non conveniens*.  *See* Dkt. Nos. 71 and 84 (granting motion for reconsideration to transfer rather than dismiss the action).  This Motion is made by the ZPI Defendants because the action should be dismissed pursuant to Rule 12(b)(6) and on the *forum non conveniens* grounds that were not determined in Washington.

1    The First Amended Complaint ("FAC") of plaintiff Robert Cabell ("Cabell") alleges a

2  variety of claims against the ZPI Defendants regarding the literary character ZORRO.  ZPI is a direct

3  successor-in-interest to the rights of Johnston McCulley ("McCulley"), the author who created

4  ZORRO many decades ago, and Gertz is the president of ZPI.  For many years, ZPI and Gertz have

5  been involved in creating and licensing various works featuring ZORRO – including a wide variety

6  of consumer goods and works of entertainment, among them the popular movies THE MASK OF

7  ZORRO and THE LEGEND OF ZORRO, featuring Antonio Banderas and Catherine Zeta-Jones, the

8  novel ZORRO by Isabel Allende ("the Allende Novel"), and the theatrical musical ZORRO, THE

9  MUSICAL ("the ZLL Musical").[1]

10    Cabell is an interloper who created an unauthorized ZORRO musical entitled Z – THE

11  MUSICAL OF ZORRO ("the Cabell Musical").  In this lawsuit, Cabell alleges, among other things,

12  that (a) the character ZORRO is in the public domain and can be used with impunity by all, **_and_** (b)

13  that several ZORRO works authorized by the ZPI Defendants and/or their associated companies –

14  specifically, both the Allende Novel and the ZLL Musical – supposedly infringe Cabell's alleged

15  copyright in the Cabell Musical.  In any event, Cabell's claims are defective, and the action should

16  be dismissed for the following reasons:

17    First, under principles of _forum non conveniens_, this Court should dismiss Cabell's claims, in

18  whole or in part, because of parallel litigation that is pending between the same parties in Germany.

19  Specifically, ZPI filed two lawsuits seeking injunctive relief in Germany in early 2013 alleging that

20  the productions of the Cabell Musical slated for the Clingenburg Festspiele (festival) and the Villa

21  Fuchs theatre infringed ZPI's rights in ZORRO.  _See_ FAC ¶¶ 13-19, 33-48.  Then, on November 23,

22  2013, Cabell filed his own civil action against ZPI in Germany, seeking an order that ZPI may not

23  try to enjoin the advertising or production of the Cabell Musical there and demanding monetary

24  damages from ZPI.  Because this litigation in Germany overlaps substantially with Cabell's claims

25  here, under principles of _forum non conveniens_, this Court should not entertain Cabell's duplicative

26  claims that can be resolved more efficiently in Germany.

27

28
___
[1] The rights to the ZLL Musical are owned and controlled by Zorro London Limited ("ZLL"), which is based in London, England.  Gertz is an officer of both ZPI and ZLL, although they are separate companies with different ownership.

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

1    Second, even if the Court does not dismiss this lawsuit in whole or in part on *forum non*

2  *conveniens* grounds, it should dismiss each and every individual claim under Rule 12(b)(6) because

3  they fail to state legally cognizable claims.  For example, Cabell's First Claim for copyright

4  infringement is based on insufficient bare legal conclusions and fails to allege "sufficient factual

5  matter" to "state a claim for relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662,

6  663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,

7  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  As set forth below, *all* of Cabell's claims are alleged

8  deficiently for a variety of reasons.  Accordingly, the FAC should be dismissed in its entirety.

9  **II.    PROCEDURAL BACKGROUND**

10   On March 13, 2013, Cabell filed this lawsuit against ZPI, Gertz and Stage Entertainment

11  Licensed Productions ("SELP") in the U.S. District Court for the Western District of the State of

12  Washington.  Dkt. No. 1.  The Complaint asserted claims for declaratory judgment, injunctive relief,

13  cancellation of federal trademark registrations, tortious interference with contract and business

14  expectancy, common law fraud and for the violation of the Washington Consumer Protection Act.

15  *Id.*  On April 8, 2013, Cabell filed his FAC, which asserted all of the above-referenced claims plus

16  an additional claim for copyright infringement.  Dkt. No. 8.  On May 16, 2013, ZPI and Gertz

17  responded to the FAC by filing the Motion to Dismiss under Fed. R. Civ. P. Rules 12(b)(2) and

18  12(b)(6) and on the basis of *forum non conveniens*.  Dkt. No. 20.  Thereafter, Cabell filed a motion

19  for leave to engage in jurisdictional discovery and to continue the hearing date of the Motion to

20  Dismiss.  Dkt. Nos. 23-24.  Eventually, ZPI and Gertz stipulated to Cabell's request and the Court

21  granted Cabell leave to conduct jurisdictional discovery.  Dkt. Nos. 27-28.

22   After a lengthy period for jurisdictional discovery, on January 22, 2014, Cabell filed his

23  opposition to the Motion to Dismiss.  Dkt. Nos. 60-61.  Following further briefing and oral

24  argument, the Court granted the Motion on October 21, 2014, and entered an Order dismissing

25  Cabell's case as to ZPI and Gertz.  Dkt. No. 71.[2]  In granting the Motion to Dismiss, the Court

26  emphasized that it was dismissing the case under Fed. R. Civ. P. Rule 12(b)(2) only because of the

27

28  [2]    SELP, which is based in Amsterdam, also filed a Motion to Dismiss for Lack of Personal
Jurisdiction (Dkt. No. 39), and was dismissed voluntarily.  Dkt. No. 51.

1   lack of personal jurisdiction, and had not reached the ZPI Defendants' other asserted grounds for

2   dismissal under Rule 12(b)(6) and on the grounds of *forum non conveniens*.   *See* Dkt. Nos. 71, p.14

3   ("Having found that Plaintiff's claims must be dismissed for lack of personal jurisdiction, ***the Court***

4   ***does not reach the additional grounds for dismissal raised by Defendants under Rule 12(b)(6) and***

5   ***forum non conveniens***") (emphasis added).   On November 4, 2014, Cabell filed a Motion for

6   Reconsideration, arguing that the case should have been transferred and not dismissed.  Dkt. No. 73.

7   On February 3, 2015, the Court granted Cabell's Motion for Reconsideration, and ordered that the

8   action would be transferred to the Northern District of California.  Dkt. No. 84.

9   **III.    FACTS RELATING TO *FORUM NON CONVENIENS***

10          Because copyright and trademark laws are national in scope and vary from country to

11   country, ZPI has retained counsel and has otherwise taken steps to secure its rights in ZORRO in

12   many countries around the globe.  Gertz Decl. ¶ 9 and Ex. 1.  Thus, for example, ZPI holds many

13   European Union Community Trademarks ("CTM") and Madrid Protocol International Trademark

14   Registrations for ZORRO that are effective in Germany – including in Class 41 for entertainment

15   and cultural activities the registrations CTM 5399787 for "ZORRO" (word), CTM 1710474

16   (ZORRO face) and International Registration No. 576107 (ZORRO horse/rider).  *Id*.

17          To protect ZPI's rights under German law, in early 2013 ZPI initiated lawsuits in Germany

18   against two theaters, Clingenburg Festspiele and Villa Fuchs, which announced plans to produce the

19   Cabell Musical.  Gertz Decl. ¶¶ 10-11.   In each of these cases, ZPI sought a preliminary injunction

20   against the theaters to: (1) desist from presenting a musical involving the story and/or character of

21   ZORRO as created by McCulley, and (2) desist from presenting, offering and/or advertising the

22   Cabell Musical in Germany under the title Z – THE MUSICAL OF ZORRO (as well as certain other

23   names containing the word ZORRO).  *Id.*  Copies of ZPI's preliminary injunction papers from the

24   Clingenburg Festspiele and Villa Fuchs actions are attached to the Gertz Decl. as Exhibits 2 and 3.

25   In the Clingenburg Festspiele case, the Landgericht (Regional Court) Nürnberg-Fürth set an oral

26   hearing for May 22, 2013, at which time the parties made an agreement under which Clingenburg

27   was obliged to add to its website and to the printed program the credit "with permission of Zorro

28   Productions Inc."  *Id.*  The Landgericht (Regional Court) Saarbrücken, where the Villa Fuchs case

was pending, conducted an oral hearing on May 15, 2013, and later issued an order denying the requested preliminary injunction. *Id*.

Subsequently, on November 23, 2013, Cabell filed his own independent civil action against ZPI in the Landgericht (Regional Court) Saarbrücken Germany ("the Cabell German Lawsuit"), seeking, among other things, both an order determining that ZPI may not attempt to enjoin Cabell's advertising or production of the Cabell Musical in Germany, and an award of monetary damages from ZPI. Gertz Decl. ¶ 12. In the translated Complaint that Cabell served on ZPI in the Cabell German Lawsuit (attached to the Gertz Decl. as Ex. 4), Cabell seeks relief that closely parallels the present action – specifically, in Germany Cabell demands:

I. that [ZPI] be ordered to refrain from demanding or causing it to be demanded that the [Cabell], its licensees, or their licensees refrain from advertising, marketing, performing, or causing the advertisement[,] marketing, or performance of the musical "Z – The Musical of Zorro" on the basis of [ZPI's] rights to the "Zorro" character as created by the author Johnston McCulley, specifically in his novel "The Curse of Capistrano", or to claim against [Cabell], its licensees, or their licensees, to cause it to be claimed against them, to assert, or to cause it to be asserted, that [ZPI] is entitled to this injunction, or to an injunction identical in terms of its content.

II. that it be established that the [ZPI] is required to compensate any past, present, and future damages that were, are, or will be suffered by [Cabell] on the basis of assertions as per Claim I. or of assertions relating to the musical "Z – The Musical of Zorro" of [Cabell] which are identical in essence to the assertions as per Claim I.

III. that [ZPI] carry the costs of the procedure.

Ex. 4, pp.1-2. Moreover, the German Complaint also alleges a synopsis of *this* case that is functionally identical to the relief sought in the German action itself:

On 13 March 2013, the Plaintiff filed a legal action against the present Defendant with the United States District Court, Western District of Washington, in Seattle.

The legal action filed by the Plaintiff against the Defendant includes the following legal requests: (a.) that it be established that the Plaintiff's musical "Z – The Musical of Zorro" does not infringe on any industrial property rights or on the intellectual property of the Defendant; (b.) that the Defendant be ordered to refrain from making claims against the Plaintiff for injunctive relief relating to "Z – The Musical of Zorro", based on the argument that it would infringe on the industrial property rights or on the intellectual property of the Defendant; …(g.) a judgment against the Defendant for the payment of damages for the Defendant's false arrogation of the story, the character, and

the characters of the Zorro story, as they have found expression in McCulley's work "the Curse of Capistrano".

According to the legal action, the petitioner operates a licensing business on the sole basis of the assertion that it owns comprehensive rights to the Zorro character.

A ruling in those proceedings is still pending.

Ex. 4, p.10.  On June 6th, 2014, in the Cabell German Lawsuit, ZPI applied for an Order requiring Cabell to post security for ZPI's legal costs, which are recoverable by a prevailing party under German law.  Gertz Decl., ¶ 13.  This Order was granted on March 11, 2015, and Cabell was required to post a bond in the amount of EUR 18,000.00 € by April 15, 2015.  *Id.*  A copy of this Order is attached to the Gertz Decl. as Exhibit 5.  To date, Cabell has not yet posted this bond, but the Cabell German Lawsuit remains pending.  Gertz Decl. ¶ 13.

## IV.   ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Cabell's FAC alleges a great many legal conclusions that are, as a matter of law, erroneous. For example, Cabell starts out by incorrectly asserting, among other things, that "any copyright interest in McCulley's story [*i.e.*, The Curse of Capistrano] published in 1919 could not have extended past 1975" (FAC ¶ 10), without giving any consideration to the "interim extensions" of copyright that were passed by Congress during the period leading up to the enactment of the Copyright Act of 1976.[3]  Also, Cabell apparently has no compunctions about improperly citing the district court's ***vacated*** decision in *Sony Pictures Ent't, Inc. v. Fireworks Ent't Group, Inc.*, 137 F. Supp. 2d 1177 (C.D. Cal. 2001).[4]  FAC ¶ 23.  Cabell's FAC also incorrectly assumes that the alleged "public domain" status of a work for purposes of copyright also means that the work cannot be protected as a trademark (FAC ¶ 26), although the law is the exact opposite.  *Tristar Pictures, Inc. v. Del Taco Inc.*, 59 U.S.P.Q.2d 1091 (C.D. Cal. 1999) (expressly holding that ZORRO can be protected as a trademark irrespective of the copyright status of the character).  Cabell also seems to incorrectly assume that U.S. copyright laws also apply in Germany.  *See*, *e.g.*, FAC ¶¶ 58-59.

---

[3] *See* 3 M. & D. Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 9.11[A].

[4] That decision was subsequently vacated in *Sony Pictures Ent't Inc. v. Fireworks Ent't Group, Inc.*, 2002 WL 32387901 (C.D. Cal., Nov. 05, 2002).

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

Given the pervasive erroneous legal conclusions in Cabell's FAC, it is no surprise that his pleading fails to state a single valid claim for relief under the *Iqbal*/*Twombly* standard.  In particular:

1.  Cabell's First Claim for copyright infringement is based on allegations that the copyrights that he allegedly holds in the Cabell Musical were infringed by the Allende Novel and the ZLL Musical.  FAC ¶¶ 53-54.  However, Cabell fails to allege any facts that establish a "plausible" case of substantial similarity to support the improper bare legal conclusion of "infringement," which must be disregarded under *Iqbal*/*Twombly*.  *See* Section VI.B.1., *infra*.

2.  Cabell's Second Claim for declaratory relief seeks a declaration that the Cabell Musical "does not infringe upon any copyright or trademark interest of ZPI."  FAC ¶ 59.  However, this claim should be dismissed on *forum non conveniens* grounds insofar as it is based on issues of German law that are being litigated in Germany.  *See* Section VI.A., *infra*.  To the extent that this claim may be based on U.S. law, Cabell is seeking an advisory opinion and fails to allege a justiciable case or controversy as he has not alleged that he is producing the Cabell Musical in the U.S. or that any such production has been challenged by ZPI.  *See* Section VI.B.2., *infra*.

3.  Cabell's Third Claim for "preliminary and permanent injunctive relief" alleges that Cabell seeks an injunction "enjoining Defendants from making asserting [sic] that Mr. Cabell's musical infringes upon any copyright, trademark, or other intellectual property right owned by ZPI or any ZPI affiliate."  FAC ¶ 62.  This claim should be dismissed on *forum non conveniens* grounds insofar as it is based on issues of German law that are being litigated in Germany.  *See* Section VI.A., *infra*.  Also, Cabell's conclusory allegations that he is entitled to injunctive ***remedies***, fails to state an independent claim for relief under U.S. law.  *See* Section VI.B.3., *infra*.

4.  Cabell's Fourth Claim for trademark cancellation is based on allegations that ZPI's Registrations No. 1,524,207, Reg. No. 1,731,743, Reg. No. 2,296,302, Reg. No. 2,239,219, Reg. No. 2,198,254, and Reg. No. 1,912,515 should be cancelled because they constitute "fraudulent and inappropriate attempts to lengthen protection of works for which copyright have already expired."  FAC ¶ 62.  This claim is barred by the applicable statute of limitations and/or doctrine of laches because Cabell filed his TTAB Petition to cancel essentially the same trademarks in 2002 and voluntarily dismissed that Petition in 2004.  *See* Sections V. and VI.B.4., *infra*.

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

5.  Cabell's Fifth Claim for tortious interference is based on allegations that the ZPI Defendants intentionally interfered with Cabell's efforts to produce the Cabell Musical in Germany at the Clingenburg Festspiele theater and the Villa Fuchs theater.  FAC ¶¶ 71-73.  However, this claim should be dismissed on *forum non conveniens* grounds insofar as it is governed by issues of German law that are being litigated by the same parties in Germany.  *See* Section VI.A., *infra*.  Additionally, under U.S. law, these allegations fail to state a claim because the alleged acts are protected by the litigation privilege and, in addition, Cabell has not (and cannot) allege actual interference because the FAC does not (and cannot) allege that the German theaters ceased producing the Cabell Musical.  *See* Section VI.B.5., *infra*.

6.  Cabell's Sixth Claim for fraud is apparently based on allegations that the ZPI Defendants have made false representations to third parties other than Cabell.  FAC ¶¶ 78-80.  Again, the acts complained of are protected by the litigation privilege and Cabell has not (and cannot) allege detrimental reliance and a resultant injury.  *See* Section VI.B.5., *infra*.

7.  Finally, Cabell's Seventh Claim for alleged violations of Washington's Consumer Protection Act fails to allege the required "public interest" and no facts are alleged that even make Washington law applicable.  *See* Section VI.B.6., *infra*.

## V.    FACTS SUBJECT TO JUDICIAL NOTICE

Importantly, the facts underlying this dispute and Cabell's baseless allegations of "fraud" against ZPI have been known to Cabell for many years – yet he failed to take action.  Specifically, 13 years ago, on April 19, 2002, Cabell filed with the USPTO's Trademark Trial and Appeal Board ("TTAB") a Petition for Cancellation of Various Registrations of Zorro Productions, Inc. ("Petition").  Gertz Decl. ¶ 6; *see also* concurrently-filed Request for Judicial Notice ("RJN") Ex. "A."  In the Petition, Cabell sought to cancel ZPI's U.S. Trademark Registrations No. 1,524,207 (ZORRO – pre-recorded audio cassette tapes and story books), Reg. No. 1,731,743 (ZORRO – entertainment services in a television series), Reg. No. 2,198,032 (ZORRO – entertainment information via global computer network), Reg. No. 2,198,254 (ZORRO – entertainment in the nature of theater productions), Reg. No. 2,239,219 (ZORRO – pre-recorded cassettes and digital

1   discs featuring music and entertainment) and Reg. No. 2,296,302 (ZORRO – newspapers, books and

2   magazines regarding a fictional character).  *Id.*

3       In Cabell's TTAB Petition from 2002, just as in his current FAC, Cabell improperly cited the

4   district court's **vacated** decision in *Sony Pictures*, *supra*, 137 F. Supp. 2d 1177 (C.D. Cal. 2001)[5] and

5   argued that "[b]ecause the core Zorro copyrights have expired, anyone may now freely produce

6   theater productions or other media offerings featuring the Zorro character and original story

7   elements, and may use the term 'Zorro' in connection with these offerings."  *See* Petition ¶ 2 (RJN

8   Ex. "A").  Cabell's Petition further argued that ZPI's "ZORRO registrations are harmful to [Cabell],

9   and to the public in general, because they impair free access to and use of the public domain Zorro

10  material."  *Id.*  Cabell did not, however, prosecute his TTAB proceeding against ZPI.  Gertz Decl. ¶¶

11  6-8.  Cabell withdrew his Petition on October 5, 2004, and the TTAB dismissed the action without

12  prejudice on October 14, 2004.  *Id.*; *see also* RJN Exs. "B" and "C").

13      Importantly, in his FAC, Cabell is seeking cancellation of the same trademark registrations

14  that he tried to cancel in the TTAB action he filed in 2002.  Specifically, in his FAC, Cabell is now

15  seeking the cancellation of Reg. No. 1,524,207, Reg. No. 1,731,743, Reg. No. 2,296,302, Reg. No.

16  2,239,219 and Reg. No. 2,198,254 – the same Registrations that he previously sought to cancel –

17  plus Reg. No. 1,912,515 (ZORRO – comic books and trading cards).  According to the FAC,

18  cancellation of these marks is warranted because "ZPI's federal trademark registrations are used by

19  ZPI as fraudulent and inappropriate attempts to lengthen protection of works for which copyright

20  have already expired."  *See* FAC ¶ 65.  However, the statute of limitations for fraud in California,

21  C.C.P. § 338(d), which is also applicable to trademark cancellation proceedings on the grounds of

22  fraud, is only three years – and this Court can take judicial notice of the fact that Cabell knew of

23  ZPI's allegedly "fraudulent" ZORRO registrations over 10 years before this action was commenced,

24  when he filed his TTAB cancellation proceeding.  *See* RJN, Exs. "A"-"C."

25  //

26  //

27  //

28

---

[5] *See* n.4 and accompanying text, *supra*.

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

## VI.   ARGUMENT:  THE FAC SHOULD BE DISMISSED

### A.   CABELL'S CLAIMS SHOULD BE DISMISSED ON THE GROUNDS OF *FORUM NON CONVENIENS*

Courts in the U.S. usually dismiss infringement cases premised on foreign laws and events on the grounds of *forum non conveniens.  Creative Technology, Ltd. v. Aztech System PTE, Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) (copyright infringement action dismissed on *forum non conveniens* grounds in favor of action brought in Singapore); *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991) (approving dismissal of copyright and non-copyright claims on *forum non conveniens* grounds where work was distributed in Japan);  *ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 866 (E.D. Cal. 1992) (declining to "enter the bramble brush of ascertaining and applying foreign law without an urgent reason to do so"), *rev'd in part on other grounds*, 3 F.3d 1289 (9th Cir. 1993); *see also* 5 Nimmer, § 17.03 (courts have "typically declined to [hear foreign infringement cases] on *forum non conveniens* grounds").

A party moving to dismiss on *forum non conveniens* grounds must demonstrate: (1) the existence of an adequate alternative forum; and (2) that the balance of private and public factors favors dismissal.  *Lockman Foundation*, 930 F.2d at 767.  Here, there is an adequate alternative forum chosen by Cabell himself in Germany, and both the private and public factors strongly favor dismissal.  Moreover, Cabell never sought to litigate this action in California; rather, the case was transferred here after Cabell's chosen jurisdiction, Washington, was held to lack jurisdiction over the ZPI Defendants.  Thus, no deference to the plaintiff's choice of forum weighs in favor of this Court's jurisdiction over a dispute that largely pertains to events in Germany.

### 1.   Germany is an Adequate Forum

Ordinarily, an alternative forum is adequate where the defendant is amenable to process in the other jurisdiction.  *Lockman Foundation*, 930 F.2d at 768.  Here, the ZPI Defendants are amenable to process in Germany, and ZPI already availed itself of the German courts by bringing a lawsuit against the two German theaters that licensed the Cabell Musical and by appearing in the Cabell German Lawsuit.  Gertz Decl., ¶¶ 10-14.  German courts are undoubtedly the best forums for

litigating German intellectual property rights.  Indeed, Cabell acknowledged this by filing the Cabell German Lawsuit.  *Id*., ¶ 12 and Ex. 4.  This factor weighs heavily in favor of dismissal of this action.

### 2. The Private Factors Favor Dismissal

Next, the Court must weigh the private and public interest factors.  There are three private interest factors, all of which favor of dismissal: (1) location of evidence; (2) location of witnesses; and (3) problems that would interfere with an expeditious trial.  *Lockman*, 930 F.2d at 769.  Here, under the FAC, key elements of the parties' dispute turns on performances of the Cabell Musical in Germany.  *See*, *e.g.*, FAC ¶¶ 38-48, 71-72.  Cabell licensed rights to produce the Cabell Musical to Clingenberg Festspiele and the Villa Fuchs theater.  *Id*., ¶¶ 38, 44.  ZPI sent cease and desist letters to Marcel Krohn (Director of the Clingenberg Festspiele) and Johannes Dostert (Managing Director of Villa Fuchs).  *Id*., ¶¶ 39, 45.  The FAC further alleges that ZLL's Dutch theatrical agent, Willem Metz, sent a cease and desist letter to Bettina Migge, Cabell's theatrical agent in Germany.  *Id*., ¶ 41.  According to Cabell, these activities constituted, among other things, wrongful interference with his contracts to produce the Cabell Musical in Germany and entitle Cabell to declaratory and injunctive relief.  FAC ¶¶ 38-48, 58-59, 62, 71-72; *see also* Gertz Decl. ¶¶ 10.a.-d.; RJN, Exs. "D"-"G."

Plainly, the locations of evidence and witnesses, and ensuring an expeditious trial, weigh in favor of having these claims resolved in Germany.   The key material witnesses and documents are in Germany, and the determination of the legal status of ZPI's rights in the character ZORRO in Germany is an issue that the German courts can resolve more efficiently than this Court.  Indeed, Cabell implicitly admitted as much by commencing the Cabell German Lawsuit.  Critically, while both the German theaters, witnesses and documents are in the reach of German courts, they are not and could not be subject to jurisdiction in the U.S.  *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1451-52 (9th Cir. 1990) ("[t]he inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction").  It is clear that the German courts will resolve this dispute more expeditiously and effectively given that the theaters, documents, and witnesses are all in Germany, and the key issues regarding ZPI's rights in ZORRO in Germany will be resolved under German law.

*//*

---

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

### 3. The Public Factors Favor Dismissal

The public factors also overwhelmingly favor dismissal. They include the District's interest in the lawsuit, this Court's familiarity with the applicable law, the burden upon the local courts and juries, court congestion and the costs associated with resolving a dispute unrelated to this District. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). First, while the courts of Germany have a very strong interest determining intellectual property issues arising under German law that affect German theatrical productions, this Court has no substantial interests in such matters. Second, unlike the courts in Germany, this Court lacks familiarity with German law and has no jurisdiction over the witnesses and evidence located in Germany. Third, the costs and imposition on this Court of resolving a case mainly involving German law, facts and witnesses will be unduly high. Finally, while a plaintiff's choice of forum is ordinarily given deference, here Cabell never chose this Court in California. Rather, the case was transferred here after Cabell's chosen jurisdiction, the State of Washington, was held to lack personal jurisdiction over the ZPI Defendants. Thus, principles giving deference to the plaintiff's choice of forum do not weigh in favor of this Court's jurisdiction over a dispute that largely pertains to events in Germany. *See ITSI T.V. Prods.*, 785 F. Supp. at 866 (declining to "enter the bramble brush of ascertaining and applying foreign law without an urgent reason to do so"); *see also Lockman*, 930 F.2d at 767; *Creative Technology*, 61 F.3d at 704.

### B. THE INDIVIDUAL CLAIMS OF THE FAC MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

This Court should dismiss a claim when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. Rule 12(b)(6). A claim must, at a minimum, allege "sufficient factual matter" to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 570. Plausibility depends on whether or not "the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555. Thus, vague, conclusory and non-factual allegations showing the "mere possibility of misconduct" are insufficient. *Iqbal*, 556 U.S. at 679.

12

1    In *Iqbal*, the Supreme Court held that a proper pleading of a claim for relief "demands more

2  than an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and

3  outlined the analytical framework for evaluating the sufficiency of a claim under the standards

4  announced in *Twombly*.  The Supreme Court ruled that "[a] pleading that offers 'labels and

5  conclusions' or a 'formulaic recitation of the elements' of a cause of action will not do.  Nor does a

6  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,

7  at 678.  Rather, the "[f]actual allegations must be enough to raise a right to relief above the

8  speculative level, on the assumption that all the allegations in the complaint are true (even if

9  doubtful in fact)." *Twombly*, 550 U.S. at 553-55.

10    In ruling on a motion to dismiss under Rule 12(b)(6), the court is to consider the plaintiff's

11  complaint and its exhibits, materials incorporated into the complaint by reference, and matters of

12  which the court may take judicial notice.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d

13  1049, 1061 (9th Cir. 2008) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

14  (2007)); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los*

15  *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

16    Additionally, to state a "plausible" claim under *Iqbal/Twombly*, when the face of a plaintiff's

17  complaint contains allegations revealing a dispositive defense, or when matters of which the Court

18  can take judicial notice reveal such a defense, the plaintiff must plead around the defense by averring

19  additional facts that, if proven, would be sufficient to overcome the defense.  *ASARCO, LLC v.*

20  *Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Sams v. Yahoo Inc.*, 713 F.3d 1175, 1179

21  (9th Cir. 2013) (*quoting Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798

22  (2007)).  Here, as set forth below, Cabell's individual claims should also be dismissed for the failure

23  to state a claim under Rule 12(b)(6).

24         **1.    Claim One – Copyright Infringement: The FAC Fails to Allege Facts To**

25                **Support its Conclusion Regarding Infringement**

26    Cabell's First Claim for copyright infringement should be dismissed because it fails to allege

27  *facts* supporting the legal conclusion that the ZPI Defendants are liable for infringement.  FAC ¶¶

28  49-56.  A claim must allege "sufficient factual matter" to "state a claim for relief that is plausible on

its face." *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 570; *Universal Surface Tech., Inc. v. Sae – A Trading Am. Corp.*, 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011) (dismissing copyright claim where the complaint contained "'nothing more than labels and conclusions, and a formulaic recitation of the elements of a cause of action'") (*quoting Twombly*, 550 U.S. at 555); *see also Cutler v. Enzymes, Inc.*, 2009 WL 482291 at *2-3 (N.D. Cal. Feb. 25, 2009) (dismissing claim for copyright infringement for failure to set forth factual allegations); *New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697 *2-4 (C.D. Cal. Dec. 3, 2007) (granting motion to dismiss where allegations were speculative and a "formulaic recitation of the elements" of infringement).

To plead copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).  In the Ninth Circuit, in cases involving literary works, the second prong of "copying" itself has two distinct elements – it requires allegations that (1) "the infringer had access to plaintiff's copyrighted work and [(2)] ***that the works at issue are substantially similar in their protected elements***." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis added).  Moreover, allegations of substantial similarity must satisfy the Ninth Circuit's "extrinsic test," which evaluates similarities of the plots, themes, dialogue, mood, setting, pace, characters, and sequence of events of each work at issue, after "filtering out" such unprotected elements as ideas (17 U.S.C. § 102(b)) and scènes-à-faire.  *See, e.g., Funky Films, Inc. v. Time Warner Ent't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006); *Cavalier*, 297 F.3d at 826.  This requires similarities in "the actual concrete elements that make up the total sequence of events and relationships between the major characters" because "[n]o one can own the basic idea for a story." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Under these requirements, the "Form 19" copyright infringement pleading in the Appendix of the Federal Rules of Civil Procedure states that copies of the works at issue – *i.e.*, the allegedly infringed work of the plaintiff and the defendants' allegedly infringing work –***should be attached as exhibits to a plaintiff's pleading***.  *See* Fed. R. Civ. P. Appendix of Forms, Form 19, ¶¶ 3 and 6.

Here, Cabell's allegations of unlawful copying in the FAC are not sufficient to state a viable copyright infringement claim under the above authorities.  Cabell has solely alleged: (a) that the

character ZORRO is supposedly in the "public domain" and unprotectable (FAC ¶¶ 7-12, 22) and (b) unsupported bare legal conclusions – which must be ignored under *Iqbal* and *Twombly* – that, notwithstanding Cabell's claim that ZORRO is in the "public domain," the ZPI Defendants nonetheless have "willfully and intentionally infringed" the Cabell Musical by and through the Allende Novel and the ZLL Musical.  FAC ¶¶ 49-56.  Aside from the bare conclusion that the Cabell Musical allegedly has been "infringed," however, the FAC contains no factual allegations at all as to what creative elements are supposedly infringing in the Allende Novel or the ZLL Musical or which protectable elements of Cabell's works have supposedly have been copied.  Cabell has not alleged a single fact indicating that similarities of original protectable expression exist between the works under which the extrinsic test could be satisfied.  Such allegations are plainly deficient under *Iqbal* and *Twombly*.  *See Universal Surface Tech*., 2011 WL 281020 at *6; *Cutler*, 2009 WL 482291 at *2-3; *New Name*, 2007 WL 5061697 at *2-4.

Cabell's conclusory allegations in the First Claim of the FAC utterly lack "sufficient factual matter" and are patently insufficient to state a "plausible" claim for copyright infringement under *Iqbal*/*Twombly*.  Accordingly, the First Claim for copyright infringement should be dismissed.

## 2.     Claim Two – Declaratory Relief: Cabell Failed to Satisfy the Requirement of A Justiciable "Case Or Controversy"

In federal court actions seeking declaratory relief, the issue of jurisdiction under Fed. R. Civ. P. Rule 12(b)(1) is essentially the same as the question of whether the Complaint states a claim for relief under Fed. R. Civ. P. Rule 12(b)(6), since both inquiries turn on whether the case presents an "actual controversy."  The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that only "[i]n a case of actual controversy" a federal court "may declare the rights and other legal relations of any interested party …."  *K-Lath v. Davis Wire Corp.*, 15 F. Supp. 2d 952, 957 (C.D. Cal. 1998) (*quoting* 28 U.S.C. § 2201(a)).  This "actual controversy" requirement is identical to the jurisdictional "'case or controversy' requirement of Article III of the United States Constitution."  *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (citation omitted); *K-Lath*, 15 F. Supp. 2d at 957-58.

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**

1    To satisfy the therefore doubly essential requirement of a case or controversy, "the facts

2  alleged, under all the circumstances, [must] show that there is a substantial controversy, between

3  parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

4  declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  Among

5  other factors, courts look to whether there has been "meaningful preparation" by the declaratory

6  plaintiff to "conduct potentially infringing activity." *Cat Tech, LLC v. Tubemaster, Inc.*, 528 F.3d

7  871, 879 (Fed. Cir. 2008).  While a party need not engage in actual infringement to request a

8  declaration of non-infringement, the party must show a "present activity which could constitute

9  infringement or concrete steps taken with the intent to conduct such activity." *BP Chems. Ltd. v.*

10 *Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993); *Goodyear Tire & Rubber, Co. v.*

11 *Releasomers, Inc.*, 824 F.2d 953, 955-56 (Fed. Cir. 1987).  The more elusive the potentially

12 infringing activity, the more likely that the case lacks the requisite immediacy.  *Sierra Applied Scis.,*

13 *Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004).

14    Here, Cabell has alleged a real controversy ***in Germany*** concerning ***German intellectual***

15 ***property***.  However, for the reasons discussed in Section VI.A., *supra*, under principles of *forum non*

16 *conveniens* these claims should be dismissed in favor of the German forum.  Additionally, insofar as

17 the FAC purports to imply that any "case or controversy" exists in the United States regarding U.S.

18 intellectual property, the allegations of the FAC fall well-short of establishing potentially infringing

19 activity.  Cabell's FAC alleges that "Defendants assert, and [Cabell] denies, that [Cabell's] [M]usical

20 infringes ZPI's copyright and trademark interests."  FAC ¶ 58.  While Cabell has thus alleged a

21 disagreement in the United States, nothing set forth in the FAC suggests he is making "meaningful

22 preparation … to conduct potentially infringing activity" here.  *Cat Tech*, 528 F.3d at 879.  The FAC

23 fails to identify a single instance in the last 15 years in which the Cabell Musical has been performed

24 in the United States.  FAC ¶¶ 13-19.  The FAC furthermore fails to identify a single specific act of

25 preparation for the production of his work in the United States.  *Id*.  Cabell alleges that he licensed

26 his work to two theaters in Germany, giving rise to a controversy – ***in Germany*** – regarding the

27 infringement and validity of ZPI's German intellectual property rights.  But such allegations do not

28 create a case or controversy sufficient to invoke the jurisdiction of this Court.

**3.**     **Claim Three – Injunctive Relief: A Request for Injunctive Relief is Not a Cognizable Claim**

Cabell's Third Claim, for "preliminary and permanent injunctive relief" (FAC ¶ 62) alleges a conclusory entitlement to a remedy, not facts supporting a "plausible" claim as required under *Iqbal* and *Twombly*.  Aside from incorporating previous allegations, the entire Third Claim is consists of the following sentence: "Mr. Cabell requests a preliminary and permanent injunction issue enjoining Defendants from making asserting [sic] that Mr. Cabell's musical infringes upon any copyright, trademark, or other intellectual property right owned by ZPI or any ZPI affiliate."  A bare request for injunctive relief does not constitute a legally cognizable claim.  *See, e.g., Curtis v. Option One Mortg. Corp.*, 2010 WL 599816, 13 (E.D. Cal. 2010) ("Under Federal law, an injunction is a remedy to another claim or cause of action and not a claim or cause of action in and of itself.").  Moreover, to the extent that Cabell is really seeking injunctive relief *in Germany*, for the reasons discussed in Section VI.A., *supra*, these claims should be dismissed under principles of *forum non conveniens*.

**4.**     **Claim Four – Trademark Cancellation: Cabell's Claim for Trademark Cancellation is Time Barred as a Matter of Law**

Cabell's Fourth Claim for trademark cancellation is time barred.  Cabell brought an almost identical claim (in the form of his Petition to the TTAB) in 2002, which he dismissed two years later. FAC ¶ 48; RJN, Exs. "A"-"C".[6]  His present renewed cancellation claim is therefore barred by the statute of limitations and/or the doctrine of laches.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) (discussing the applicability of statute of limitation and laches to dilatory Lanham Act claims).[7]  Because the Lanham Act does not contain a statute of limitations, courts look to analogous state limitations periods.  *Reed v. United Transp. Union*, 488 U.S. 319, 323-24, 109 S. Ct. 621, 102 L. Ed. 2d 665 (1989).  If the plaintiff's claim accrued outside

---

[6]  In their concurrently-filed RJN, the ZPI Defendants request that the Court take judicial notice of, *inter alia*, Cabell's TTAB Petition, the Notice Withdrawing the Petition, and the Order of Dismissal. These are referenced by, but not attached to, the FAC.  FAC ¶ 48.  Courts can consider matters that are subject to judicial notice when deciding Rule 12(b)(6) motions.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

[7]  The Ninth Circuit has noted that "proper interplay between laches and the statute of limitations for Lanham Act claims is somewhat elusive."  *Jarrow Formulas*, 304 F.3d at 837. While there is some ambiguity regarding which standard to apply, Plaintiff's claim is time barred under both.

the state law limitations period, it is time barred by the statute of limitations.  *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993); *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140 (3d Cir. 1997).  Similarly, for the purposes of laches, courts presume that a claim is time barred if it is not filed within the statute of limitations but also consider whether (a) plaintiff's delay was reasonable, and (b) defendant would suffer prejudice.  *Jarrow Formulas*, 304 F.3d at 838.

Here, Cabell's trademark cancellation claim in the FAC is barred by the statute of limitations. Because Cabell seeks cancellation on the grounds that ZPI fraudulently obtained trademark registrations, California's three year statute of limitation for fraud claims is applicable.  FAC ¶¶ 64-65; *Official Airline Guides*, 6 F.3d at 1395 (claim under Lanham Act for fraudulently procured registration was analogous to state fraud claim); C.C.P. § 338(d) (three year statute of limitations on fraud claims).  However, Cabell brought a nearly identical action, based on the same arguments, in 2002 – ***some thirteen years ago***.  FAC ¶ 48.  In his April 19, 2002, TTAB Petition, Cabell sought to cancel six Zorro-related trademarks owned by ZPI.  *See* RJN, Ex. "A."  The instant action also seeks to cancel six Zorro related trademarks – five of which were the subject of Cabell's prior Petition. Cabell's TTAB Petition argued that ZORRO allegedly is in the copyright public domain and that therefore ZPI's trademarks should be cancelled.  These are the same claims that he alleges in the FAC.  Because Cabell clearly knew of these claims over thirteen years ago, yet failed to commence this action earlier, his cancellation claim is barred by the applicable statute of limitations.[8]

Alternatively, the Court should dismiss this claim under the doctrine of laches.  Because Cabell filed his claim outside the applicable statute of limitations, laches presumptively bars the claim.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946 (9th Cir. 2012) ("'If any part of the alleged wrongful conduct occurred outside of the limitations period, courts presume that the plaintiffs claims are barred by laches.'") (citation omitted); *Baker v. Spokane Sav. Bank*, 71 F.2d 487, 488 (9th Cir. 1934) (dismissal appropriate if claim "on its face shows laches.").  Furthermore, the other equitable considerations (including whether Cabell was diligent and/or whether the lack of

---

[8] While Plaintiff's 2002 TTAB Petition did not seek the cancellation of Reg. No. 1,912,515, the petition and the allegations of fraud certainly put Plaintiff on notice of all acts which a reasonable inquiry would have uncovered at the time.  A reasonable inquiry would have necessarily resulted in notice to Plaintiff of Reg. No. 1,912,515, the application for which was filed in 1993.  FAC ¶ 28.

1  diligence prejudiced ZPI) overwhelming support applying laches to dismiss his cancellation claim.

2  The FAC acknowledges that Cabell brought the 2002 USPTO cancellation Petition.  FAC ¶ 48.  As

3  set forth above, Cabell's 2002 TTAB Petition relates to almost exactly the same trademarks that are

4  the subject of this 2013 lawsuit.  Cabell's FAC fails, however, to offer any explanation as to why,

5  after dismissing the TTAB Petition in 2004, Cabell waited nearly a decade to file the instant action.

6  *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117, 119-120 (9th Cir. 1980) (granting a motion

7  to dismiss where plaintiff "[did] not allege any facts [] tending to excuse his failure to discover

8  [defendant's] misconduct for a period of twenty-four years").  Moreover, the FAC inferentially

9  alleges that ZPI was prejudiced by Cabell's delay because of its detrimental reliance in using the

10  challenged trademark registrations to "buil[d] a licensing empire."  FAC at 2:13.  Cabell's Fourth

11  Claim for cancellation is therefore barred by laches and should be dismissed.

12          **5.**      **Claims Five and Six – Tortious Interference and Fraud: Cabell's Tortious**

13                      **Interference and Fraud Claims are Barred by the Litigation Privilege and**

14                      **Fail to Allege Causation and Injury to Cabell**

15          Both Cabell's Fifth Claim for tortious interference and his Sixth Claim for fraud fail to state

16  claims because the acts complained of were privileged.  These claims turn on correspondence that

17  ZPI sent theaters in Germany.  FAC ¶¶ 71-73, 78-80; *see also* Gertz Decl. ¶¶ 10.a.-d.; RJN, Exs.

18  "D"-"G."  Thus, these claims should also be dismissed on the grounds of *forum non conveniens*.  *See*

19  Section VI.A., *supra*.  Moreover, while Cabell avers that these letters constitute tortious interference

20  and fraud, they are expressions of legal positions that preceded the filing of legal actions in Germany

21  and therefore are privileged.  *See* RJN, Exs. "D"-"G.".  They cannot, therefore, give rise to a claim

22  of tortious interference or fraud.  *See, e.g., Rubin v. Green*, 4 Cal. 4th 1187, 1194-95, 847 P.2d 1044,

23  17 Cal. Rptr. 2d 828 (1993) (holding that pre-litigation communications with "some relation" to an

24  anticipated lawsuit fall within the litigation privilege under Civil Code 47(b)).

25          Even if the cease and desist letters were not privileged (but they are), and were not subject to

26  dismissal on the grounds of *forum non conveniens* (but they are), Cabell's Fifth and Sixth Claims

27  must be dismissed because they both fail to allege critical elements – causation and injury.  Cabell's

28  FAC notably fails to aver a causal link by which ZPI's cease and desist letters had any causal effect

on the theaters in Germany resulting in damages to Cabell.  These allegations are absent because, as Cabell knows, the letters did not interfere with Cabell's relationships with the German theaters and the theaters did not rely on any statements set forth therein.  Rather, the theaters refused to cease production of the Cabell Musical and although ZPI was forced to petition the courts in Germany, neither production was enjoined.  Thus, even if the communications were not previleged, Cabell has at most alleged ***attempted*** tortious interference and fraud, which are not legally cognizable claims.

As noted in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937, 131 Cal. Rptr. 2d 29 (2003), a tortious interference claim necessitates an "actual disruption of the relationship."  Similarly, to maintain a claim for fraud, a plaintiff must allege that facts that, if proven, would establish that the plaintiff suffered "resulting damage[s]."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990, 102 P.3d 268, 22 Cal. Rptr. 3d 352 (2004).  Here, Cabell alleges that the ZPI Defendants attempted to interfere with licenses between Cabell and two theaters in Germany (FAC ¶¶ 70-73) and that the ZPI Defendants supposedly made misrepresentations to those German theaters (FAC ¶¶ 78-80).  Notably, Cabell does not allege that performance under either license was impaired.  *Id*.  Absent factual allegations of causation and damages, Cabell's conclusory assertion, tacked onto the end of each claim, that he "suffered substantial financial damage," must be disregarded.  *Id*., ¶ 76; *Iqbal*, 556 U.S. at 663.  Thus, the absence of causation and damages allegations requires the dismissal of the Fifth and Sixth claims for interference and fraud.

**6.**   **Claim Seven – Washington Consumer Protection Act:  Cabell's CPA Claim Fails to Adequately Allege a Public Interest**

To state a claim under the Washington Consumer Protection Act ("CPA") (*see* Revised Code of Washington 19.86 *et seq*.), Cabell must allege: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) a public interest; (4) injury in his business property; and (5) a causal link between the unfair or deceptive act and the injury suffered.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).  Failure to satisfy any one of the elements is fatal to a CPA claim.  *Id.* at 794-95.  Here, the FAC's allegations of "public interest" are insufficient to satisfy the required element of a CPA claim.  The private dispute between Cabell and ZPI regarding the Cabell Musical is not alleged to be, and actually is not, a

matter of public interest in Washington or elsewhere.  While the FAC generally alleges "the public is precluded from new works of art," Cabell does not allege that he has displayed his "works of art" to the citizens of Washington, or that anyone else is doing so.  FAC ¶ 85.  Cabell also fails to allege facts making a CPA violation plausible, given that the FAC utterly lacks "sufficient factual matter" to support his claim to have suffered significant injury from unfair or deceptive trade practices. *Iqbal*, 556 U.S. at 663.  Finally, no allegations are contained in the FAC under which Washington law would even be applicable to this dispute, which is alleged to exist primarily in Germany.

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, the ZPI Defendants respectfully ask the Court to dismiss Cabell's FAC and all of the individual claims alleged therein in their entirety against ZPI and Gertz on the grounds of *forum non conveniens* and because of Cabell's failure to allege facts sufficient to state viable claims for relief.


Dated: April 14, 2015                         FOX ROTHSCHILD LLP


                                              By   /s/ David Aronoff
                                                    David Aronoff
                                                    Jeffrey Grant
                                                    Jaemin Chang
                                                    Attorney for Defendants
                                                    ZORRO PRODUCTIONS, INC. AND
                                                    JOHN GERTZ

**MOTION TO DISMISS OF DEFENDANT ZORRO PRODUCTIONS INC. AND JOHN GERTZ**
**Case No.: 15-CV-00771-EJD**