1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                              SAN JOSE DIVISION

7

8      ROBERT W. CABELL,                          Case No.  5:15-cv-00771-EJD

                      Plaintiff,
9                                                 ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDATNS'
10            v.                                   MOTION TO DISMISS

11     ZORRO PRODUCTIONS INC., et al.,             Re: Dkt. No. 120

                      Defendants.
12

13            Plaintiff Robert W. Cabell ("Plaintiff") brings this action for copyright infringement and

14     related claims against Zorro Productions, Inc. ("ZPI") and ZPI's owner John Gertz (collectively,

15     "Defendants"), in connection with a musical Plaintiff created based on the fictional character

16     "Zorro."  Presently before the court is Defendants' Motion to Dismiss Plaintiff's Second Amended

17     and Supplemental Complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and *forum*

18     *non conveniens*.  Dkt. No. 120.

19            The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and

20     1338.  Having carefully reviewed the pleadings and briefs submitted by the parties in this case,

21     Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART for the

22     reasons discussed below.

23     I.     BACKGROUND

24            The following is an overview of the factual and procedural background relevant to the

25     instant motion, and is taken primarily from Plaintiff's Second Amended and Supplemental

26     Complaint ("SAC").  Dkt. No. 119.

27                                                    1

### A. Factual Background

As discussed in this court's previous Order Granting Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 118), the character "Zorro" is a familiar one to most people. He is "well-known as the masked outlaw who defends the public against tyrannical officials and other villains." SAC at 1-2. "Zorro" is the secret identity of Don Diego de la Vega, a Spanish nobleman, who transforms into the freedom fighter by wearing a black cape or cloak, a black sombrero, and a black mask that covers the top of his head from eye level upwards. Id. at ¶ 8. And as a fictional character, "Zorro" has been around for a while; the first "Zorro" story was written in 1919 by Johnston McCulley, and the first movie featuring the character was made in 1920 by Douglas Fairbanks, Sr. Id. at ¶¶ 7, 9. Based on this history, Plaintiff alleges that any copyright interest in the works of McCulley and Fairbanks expired in 1975 and 1976 respectively. Id. at ¶¶ 10, 11.

In 1996, Plaintiff published a musical entitled "Z - The Musical of Zorro" ( "Z Musical" or the "Musical") based "expressly" on McCulley's 1919 story and Fairbanks' 1920 movie. Id. at ¶ 13. Zorro is portrayed in Plaintiff's musical as "a masked avenger leading a double life, donned in a black mask, black sombrero, black cape, and with a sword and whip." Id. at ¶ 14. The musical was initially released on audio cassette and then CD format, and a stage production premiered in Eugene, Oregon in 2000. Id. at ¶¶ 19-20. Plaintiff has registered his original and revised scripts and the audio versions with the U.S. Copyright Office, and his copyright interest "extends only to the original, novel elements of his work and do not include those elements present in any Zorro works that were in the public domain as of 1996." Id. at ¶¶ 16-18.

Defendant ZPI is a California business corporation located in Berkeley, California. Id. ¶ 2. Plaintiff alleges on information and belief that Defendant Gertz owns, operates, and has control over ZPI, and also resides in Berkeley, California. Id. ¶ 3. Plaintiff is a resident of King County, Washington. Id. ¶ 1.

Plaintiff contends that ZPI, despite knowing that any copyright interest in Zorro expired,

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

has for years falsely asserted that it owns worldwide trademarks and copyrights in the name and visual likeness of Zorro. Id. at ¶¶ 21-22. To that end, Plaintiff asserts that ZPI obtained several registered trademarks between 1987 and 1997 concerning the use of the word mark "ZORRO" in story and comic books, television shows, videos featuring music and entertainment, and theater productions. Id. at ¶¶ 27-34. According to Plaintiff, Defendants "fraudulently obtained these federal trademark registrations as a means to improperly extend the copyright protection that has expired for early Zorro works." Id. at ¶ 34. Plaintiff highlights that ZPI was unsuccessful in its prior attempt to assert federal copyright and trademark infringement claims concerning Zorro. Id. at ¶¶ 25-27 (citing Sony Pictures Ent., Inc. et. al. v. Fireworks Ent. Grp., Inc. et al, 137 F. Supp. 2d 1177, 1185 (C.D. Cal. 2001) and Sony Pictures Ent., Inc. et. al. v. Fireworks Ent. Grp., Inc. et al, 156 F. Supp. 2d 1148, 1162-1163 (C.D. Cal. 2001)).

In connection with his own work, Plaintiff asserts that his script and audio performances were successful, and that Z Musical was "poised to become a Broadway hit." Id. at ¶ 38. In 1996, Plaintiff even met with Defendant Gertz about producing the Musical, during which time Plaintiff states that he provided Gertz with a copy of the script. Id. ¶ 37. However, the conversations ultimately broke down, at which point Plaintiff alleges ZPI began, for the first time, aggressively asserting that Plaintiff's script infringed ZPI's copyrights and trademarks, and insisting that Plaintiff acquire a license from ZPI to produce it. Id.

In consultation with legal counsel, Plaintiff proceeded with the commercial release of Z Musical without a license from Defendants. Id. By 2001, he had retained well-known choreographer and producer Wayne Cilento in anticipation of a Broadway production, and engaged the William Morris agency to represent his interests in connection the Musical. Id. at ¶ 39. However, soon thereafter, Plaintiff alleges that Mr. Cilento and the William Morris agency were approached by Defendants and told that any performance of Plaintiff's musical would require licenses from Defendants, threatening that any unauthorized production would result in litigation. Id. at ¶ 40. As a result of this conduct, Mr. Cilento and the William Morris agency

3

United States District Court
Northern District of California

ceased work on Plaintiff's behalf and Z Musical did not appear on Broadway. Id. at ¶ 41. After the Musical was commercially released, Plaintiff alleges that Defendants also harassed and threatened litigation against other vendor's of his work, and actively discouraged third parties from producing the musical in the United States, London, Brazil, Japan, Germany and Belgium. Id. at ¶¶ 42, 45.

In response to Defendants alleged interference and threats of litigation, in 2002 Plaintiff filed a Petition for Cancellation of ZPI's registered trademarks in the United States Patent and Trademark Office. Id. at ¶¶ 35-36, 43. However, in 2004 Plaintiff voluntarily withdrew the Petition without prejudice as part of a "walk-away agreement" negotiated by Sony Pictures out of concern for the dispute's impact on the release of its upcoming film, "Legend of Zorro." Id. at ¶ 36. As part of the deal, Plaintiff agreed to withdraw his cancellation petition, and ZPI agreed not to challenge Plaintiff's Zorro-related copyrights and trademarks. Id.

In early 2013, Plaintiff - through his agent, Gallissas Theaterverlag und Mediaagentur GmbH ("Gallissas") - licensed Z Musical to affiliates in Germany so that it could be performed in Clingenberg and Villa Fuchs, Germany. Id. at 46. Soon thereafter, Plaintiff alleges ZPI again began contacting his business affiliates - including Gallissas and other licensees - making false statements regarding ZPI's copyright and trademark rights in the story and character of Zorro, and falsely claiming that Plaintiff's musical violated such rights. Id. at ¶ 47. ZPI then filed lawsuits to that effect against the Clingenberg and the Villa Fuchs productions in Germany, neither of which were successful in enjoining the production from going forward. Id. at ¶¶ 48, 50. When the lawsuits failed, Plaintiff alleges that ZPI met with Gallissas in San Francisco, California and "induced" Gallissas to represent ZPI, in breach of its contract with Plaintiff. Id. at ¶¶ 51-55.

Outside of the disputes related to the German productions, Plaintiff contends that Defendants further interfered with his opportunities to license the production of his musical in the United States on at least three occasions. Specifically, Plaintiff alleges that in the fall of 2013, he was involved in negotiations to have his musical presented at The 5th Avenue Theatre in Seattle,

4

Washington during the 2014 theatre season.  Id. at ¶ 57.  Plaintiff claims that Defendants

intentionally and improperly interfered with the success of the negotiations by threatening the

theatre.  Id.   Also in the fall of 2013, Plaintiff alleges that he was involved in similar negotiations

to have his musical presented at The Philadelphia Shakespeare Theatre in Philadelphia,

Pennsylvania, as well as The American Theatre Group in Rahway, New Jersey.  Id. at ¶ 58.

Plaintiff alleges that the negotiations with both groups were "discontinued" after the directors

learned of Defendants' intent to sue third-parties involved in the production of the Musical, and

Plaintiff lost both business opportunities associated with The Philadelphia Shakespeare Theatre

and The American Theatre Group.  Id.

Additionally, Plaintiff alleges that ZPI financed and holds a copyright interest in a 2005

book entitled "Zorro," which was authored by Isabel Allende.  Id. at ¶ 62.  Plaintiff claims that

Allende's novel copies original material from Plaintiff's script, which he alleges ZIP had access to

because Plaintiff had provided Gertz with copies of the script during their 1996 discussions

regarding potential collaborations.  Id. at ¶¶ 61-62, 64-67.  Soon after the release of Allende's

novel, Plaintiff alleges that ZPI authorized and was responsible for the production of a Zorro

musical based on the novel.  Id. at ¶¶ 63-64.  Plaintiff contends that the similarities between his

script, Allende's novel, and ZPI's musical based on the novel include the use and emphasis on

gypsies and flamenco dancing, as well as the fact that both stories are set as prequels to

McCulley's 1919 original.  Id. at ¶¶ 60, 62-66.  Plaintiff also alleges that Defendants copied

elements of certain songs from his musical, retitled them, and included them in ZIP's musical

production.  Id. at ¶ 67.  ZPI's musical premiered in 2008 and has been performed in various

United States jurisdictions including Atlanta, Georgia and Salt Lake City, Utah.  Id. at ¶ 63.

**B.     Procedural Background**

On March 13, 2013, Plaintiff filed a Complaint against ZPI, Gertz, and Stage

Entertainment Licensed Productions[1] in the United States District Court for the Western District of

---

[1] Stage Entertainment Licensed Production was named as a defendant in Plaintiff's initial

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO
DISMISS

United States District Court
Northern District of California

Washington.   Dkt. No. 1.  Plaintiff filed a First Amended Complaint on April 8, 2013 (Dkt. No. 8), and Defendants moved to dismiss the FAC on May 16, 2013, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and under the doctrine of forum non conveniens.  Dkt. No. 20.   After Plaintiff conducted early discovery on personal jurisdiction, the district court in Washington granted the 12(b)(2) motion and dismissed the action with respect to ZPI and Gertz.  Dkt. Nos. 71, 72.  In response, Plaintiff moved the court to reconsider the dismissal in favor of transfer.  Dkt. Nos. 73.  The court did so, reinstated the claims against ZPI and Gertz, and transferred the action to this court.  Dkt. No. 84.

On April 14, 2015, after the case was transferred to this district, Defendants again moved to dismiss on grounds of forum non-conveniens and for failure to state a claim under Rule 12(b)(6).  Dkt. No. 101.  Plaintiff then filed a Motion for Leave to File Second Amended and Supplemental Complaint (Dkt. No. 105), which the court granted on September 23, 2016.  Dkt. No. 118.  Accordingly, the court also denied without prejudice Defendants' first Motion to Dismiss.  Id.

On September 26, 2016, Plaintiff filed his SAC, asserting the following claims: (1) copyright infringement, (2) declaratory judgment of non-infringement, (3) cancellation of federal trademark registration; (4) tortious interference with contract and business expectancy; (5) common law fraud; and (6) unfair competition and unfair trade practices in violation of California Business and Professions Code § 17200.  SAC at 16-20.  Plaintiff also seeks a preliminary and permanent injunction against Defendants prohibiting them from making claims that Plaintiff's musical infringes upon any of Defendants' intellectual property rights.  Id. at 20, ¶ G.  On October 14, 2016, Defendants moved to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and on grounds of forum non-conveniens.  Dkt. No. 120 ("Mot.").

pleadings, but was dismissed voluntarily after it filed a motion to dismiss for lack of personal jurisdiction.  See Dkt. No. 51.

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

## II.   LEGAL STANDARD

### A.   12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial experience and common sense." Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

United States District Court
Northern District of California

the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

## B. 12(b)(1)

A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979).

## III. DISCUSSION

### A. Forum Non Conveniens

Defendants argue that the court should dismiss this case on the grounds of forum non conveniens because the claims asserted are duplicative of parallel litigation pending between the same parties in Germany. Mot. at 2, 9. And even if the court is not inclined to dismiss all causes of action on this basis, Defendants contend it should at least do so with respect to Plaintiff's claims for declaratory relief (Claim 2), tortious interference (Claim 4), fraud (Claim 5) and unfair competition (Claim 6), which they allege are most directly related to the relief sought by Plaintiff in Germany.

Under the doctrine of forum non conveniens, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). In a motion to dismiss based on forum non conveniens, the defendant bears the burden of showing that there is an adequate alternative forum, and that the balance of private and public interest factors favors dismissal. See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Piper

8

Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981)); Gemini Capital Group v. Yap Fishing Corp.,

150 F.3d 1088, 1092–95 (9th Cir. 1998) (analyzing factors). The moving defendant must make a

"clear showing of facts which establish such oppression and vexation of a defendant as to be out

of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." Dole

Food Co., Inc. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002); c.f. Piper Aircraft, 454 U.S. at 256

n. 23 (explaining that if the balance of conveniences suggests that a trial in the chosen forum

would be unnecessarily burdensome for the defendant or the court, a citizen's choice should not be

given dispositive weight and the case should be dismissed). The determination to dismiss under

the forum non conveniens doctrine is "committed to the sound discretion of the trial court." Piper

Aircraft, 454 U.S. at 257; Lueck, 236 F.3d at 1143; see also Am. Dredging Co. v. Miller, 510 U.S.

443, 455 (1994) (explaining that upon a reasonable balancing of all relevant public and private

interest factors, a district court's decision deserves substantial deference).

Here, Defendants' primary argument is that because the earlier-filed litigation in Germany

overlaps substantially with the claims brought in this action, under the principles of forum non

conveniens, such claims can and should be resolved in Germany. Mot. at 2, 9. For the reasons

discussed below, the court disagrees.

### i. Adequacy of Germany as an Alternative Forum

The first inquiry in a forum non conveniens analysis is whether an adequate alterative

forum exists. Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 701 (9th Cir. 1995).

A forum will usually be considered adequate unless "the remedy provided by the alternative forum

is so clearly inadequate or unsatisfactory that it is no remedy at all." Creative Tech, 61 F.3d at 701

(citing Piper, 454 U.S. at 254). The requirement is also generally satisfied if the defendant is

amenable to service of process in the alternative forum. Id. Germany is an adequate forum in

view of these factors.

Here, Defendants are clearly amenable to service of process in Germany as there is

presently ongoing litigation there between the parties. However, Plaintiff argues that the case

United States District Court
Northern District of California

1   cannot be resolved by a German court because the dispute at issue "involves works authored in the

2   United States, by United States citizens, and subject to United States copyright laws…[and

3   because it] seeks cancellation of trademark registrations issued by the United States Patent and

4   Trademark Office."  Opp. at 7.  This argument is unpersuasive and has ben rejected by the Ninth

5   Circuit as a basis for avoiding a forum non conveniens analysis.  Creative Tech, 61 F.3d at 701.

6   ("United States nationals alleging violations of United States copyright law are subject to forum

7   non conveniens analysis.").  In Creative Tech, the Ninth Circuit explained,

8
9   > Both the Universal Copyright Convention (U.C.C.) and the Berne
    > Convention for the Protection of Literary and Artistic Works
    > (Berne) mandate a policy of national treatment in which copyright
10  > holders are afforded the same protection in foreign nations that those
    > nations provide their own authors. …[T]he principle of national
    > treatment implicates a rule of territoriality in which the applicable
11  > law is the copyright law of the state in which the infringement
    > occurred, not that of the state of which the author is a national or in
12  > which the work was first published.

13  Id. at 700-01 (quoting Subafilms, Ltd. v. MGM–Pathe Comm., 24 F.3d 1088, 1097 (9th Cir. 1994)

14  (en banc) and David Nimmer and Melville B. Nimmer, Nimmer on Copyright § 17.05 at 17–39

15  (1994)).   The court finds that Germany is an adequate alternative forum.

16              **ii.     Balance of Private and Public Interest Factors**

17          Notwithstanding Germany's adequacy as a forum, the court finds that Defendants have not

18  met their burden to show that the balance of public and private interest factors favors dismissal

19  here.  "Private interest factors include: ease of access to sources of proof; compulsory process to

20  obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and

21  other problems that interfere with an expeditious trial."  Lockman Found. v. Evangelical All.

22  Mission, 930 F.2d 764, 769 (9th Cir. 1991) (citing Contact Lumber Co. v. P.T. Moges Shipping

23  Co., 918 F.2d 1446, 1451 (9th Cir. 1990)).

24          Here, both Plaintiff and Defendants are located the United States.  See SAC at ¶¶ 1-3.

25  While the events that transpired in Germany are relevant to certain claims asserted in this action,

26  Plaintiff also alleges numerous facts giving rise to his claims for copyright infringement, fraud,

27

28  Case No.: 5:15-cv-00771-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO
    DISMISS

and tortious interference that occurred in the United States.  See, e.g., id. at ¶ 57 (alleging Defendants impeded negotiations with The 5th Avenue Theatre in Seattle, Washington); id. at ¶ 58 (alleging Defendants interfered with negotiations between Plaintiff and The Philadelphia Shakespeare Theatre in Philadelphia, Pennsylvania and The American Theatre Group in Rahway, New Jersey, resulting in Plaintiff losing both business opportunities); id. at ¶¶ 51-55 (alleging Defendants met with Gallissas in San Francisco, California and induced Gallissas to represent ZPI, in breach of its contract with Plaintiff);  id. at ¶ 63 (alleging ZPI's Zorro musical infringed Plaintiff's copyrights and has been performed in various United States jurisdictions including Atlanta, Georgia and Salt Lake City, Utah).  Thus, while some evidence related to the Clingenburg and Villa Fuchs productions may indeed be located in Germany, other witnesses and proof relevant to this action are more likely to be located in the United States.  Accordingly, the private interest factors appear to weigh in favor of maintaining the action in the United States, or are, at best, neutral on this issue.  To the extent that some inconvenience may arise in this forum, Defendants have not demonstrated that it rises to the level of "such oppression and vexation" so as to be out of proportion to Plaintiff's choice of forum here.  See Dole Food, 303 F.3d at 1118.

Turning to consideration of the public interest factors, Defendants fare no better.  "Public interest factors encompass court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar."  Lockman, 930 F.2d at 771 (quoting Contact Lumber, 918 F.2d at 1452; see also Nebenzahl v. Credit Suisse, 705 F.2d 1139, 1140 (9th Cir. 1983).

Defendants argue that "while the courts of Germany have a very strong interest in determining intellectual property issues and business torts arising under German law that affect German companies like Gallissas, this Court has no substantial interests in such matters."  Mot. at 11. They further argue that "unlike the courts in Germany, this Court lacks familiarity with German law and has no jurisdiction over the parties, witnesses and evidence located in Germany." Id. at 11-12.  This argument is specious and unconvincing.  Defendants seem to assume without

further explanation that German law governs this action, when in fact Plaintiff's substantive causes of action facially appear to arise under U.S. law, and are based on events that occurred primarily within the U.S. Moreover, to the extent that German courts have an interest in determining issues that impact German companies like Gallissas, the same is true for U.S. courts, which may equally be said to have an interest in resolving disputes between U.S. citizens and a U.S. company, and concerning intellectual property also protected under U.S. law. As discussed above, Plaintiff asserts claims under U.S. law that are distinct and independent of the German lawsuits, and alleges specific facts concerning events that occurred on U.S. soil. Defendants' only other argument reiterates the concern that evidence and witnesses are located in Germany, which would make the costs of litigating the dispute in this forum higher. For the same reasons discussed above, this argument is unpersuasive.

It is Defendants' burden to clearly show that the alternative forum is superior in light of the private and public interest factors worthy of consideration, and they have not done so here. Accordingly, Defendants' Motion to Dismiss based on forum non conveniens is DENIED. Alternatively, Defendants argue that the court should at least sever the claims, retaining only the First and Third causes of action, and dismiss the other claims for forum non conveniens. However, the relevant factual allegations concerning the United States relate – at least in part – to all the claims at issue. Accordingly, the Motion is also denied as to any severable claims.

## B.    Sufficiency of Plaintiff's Claims Under 12(b)(6)

### i.    Copyright Infringement (Claim 1)

To plead copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). For disputes related to literary works, the second "copying" prong has two distinct elements – first, it requires allegations that "the infringer had access to plaintiff's copyrighted work," and second, "that the works at issue are substantially similar in their protected elements." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir.

2002).  Here, the SAC alleges – and Defendants do not dispute – that Plaintiff owns multiple copyright registrations for his script and related audio recordings.  SAC ¶¶ 16-19.  As to the copying "prong," for the purposes of this motion Defendants also do not dispute having "access" to the script, instead focusing their argument on the issue of substantial similarity.  MTD at 14-15.

As Defendants correctly point out, "[t]he Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another."  Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990) (citation omitted).  Under this approach, a plaintiff must establish "substantial similarity of general ideas under the 'extrinsic test' and substantial similarity of the protectable expression of those ideas under the 'intrinsic test.'"  Id.; accord Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1098 (C.D. Cal. 2011), aff'd sub nom. Wild v. NBC Universal, 513 F. App'x 640 (9th Cir. 2013).  The "intrinsic test" is a subjective comparison that is left to the trier of fact and focuses on "whether the ordinary, reasonable audience" would find the "total concept and feel of the works" to be substantially similar.  Wild, 788 F. Supp. 2d at 1098 (citing Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir.2010).  In contrast, the "extrinsic test is an objective comparison of specific expressive elements" of the works, and focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works."  Id. (quoting Cavalier, 297 F.3d at 822); see also Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1077 (9th Cir. 2006).

Defendants argue that Plaintiff has failed to allege plausible facts to establish substantial similarity under the extrinsic test, and thus cannot support a claim of copyright infringement.  However, as the string of Ninth Circuit authority cited by Defendants shows, satisfaction of the extrinsic test is required primarily in the context of motions for summary judgment.  See Benay, 607 F.3d at 624 ("On a motion for *summary judgment*, we apply only the extrinsic test….If the [Plaintiffs] fail to satisfy the extrinsic test, they cannot survive a motion for *summary judgment*.") (emphasis added); Funky Films, 462 F.3d at 1077 ("At *summary judgment*, courts apply only the extrinsic test… A plaintiff who cannot satisfy the extrinsic test necessarily loses on *summary*

United States District Court
Northern District of California

*judgment…*") (emphasis added); <u>Kouf v. Walt Disney Pictures & Television</u>, 16 F.3d 1042, 1045

(9th Cir. 1994) ("A plaintiff avoids *summary judgment* by satisfying the extrinsic test which

makes similarity of the works a triable issue of fact.") (emphasis added); <u>Berkic v. Crichton</u>, 761

F.2d 1289 (9th Cir. 1985) (affirming *summary judgment* for defendants after finding there was "no

substantial similarity" between the defendants' novel and motion picture and the plaintiff's

"screen treatment" under the extrinsic test); <u>see</u> Reply at 7, Dkt. No. 131.

      While Defendants also cite certain cases where district courts have granted dismissal of

copyright infringement claims under Rule 12(b)(6) based on a plaintiff's failure to satisfy the

extrinsic test, such cases are distinct from the facts and circumstances present here. For example,

in <u>Shame on You Productions, Inc. v. Elizabeth Banks</u>,[2] the defendants presented the district court

with "an 'extensive comparison of the two works,' and support[ed] the motions with [copies of]

the screenplays at issue and the motion picture." 120 F. Supp. 3d at 1144. This allowed the court

to conduct a comprehensive comparison of the two works, including 24 pages of analysis

dedicated exclusively to the extrinsic test factors. <u>See id.</u> at 1149-1173. Similarly, in <u>Zella v.</u>

<u>E.W. Scripps Company</u>, the district court concluded that it could rule on the issue as a matter of

law because the parties had provided the court with the relevant works. <u>See</u> 529 F. Supp. 2d 1124,

1139 (C.D. Cal. 2007). [3] Finally, in <u>Wild v. NBC Universal, Inc.</u>, there was no dispute between

the parties as to the substance of the works at issue, which enabled the court to compare the

undisputed elements of the works at issue and draw a conclusion as a matter of law. 788 F. Supp.

2d at 1098 (explaining that "because there is no dispute regarding the nature and content of the

[2] 120 F. Supp. 3d 1123 (C.D. Cal. 2015), <u>aff'd sub nom.</u> <u>Shame on You Prods., Inc. v. Banks</u>, No. 15-56372, 2017 WL 1732279 (9th Cir. May 3, 2017).

[3] In relevant part, the court explained,

    The Court finds that it may rule on Plaintiffs' copyright claim against the CBS Defendants as a matter of law. They have attached to their Complaint the one-page synopsis and three-page script for *Showbiz Chefs,* so the Court may consider it on a motion to dismiss. The Court may also consider the *Rachael Ray* show, as its content comprises the basis for Plaintiffs' claim and the CBS Defendants have, provided copies of episodes.

<u>Id.</u> at 1139.

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

two works, the Court can determine whether, under the extrinsic test, the two works are substantially similar.").  Notably, the extrinsic test was used in these cases because the facts and circumstances allowed these courts to reach conclusions as a matter of law.  However, none of the cases modify or otherwise hold that the pleading standard requires satisfaction of the extrinsic test at the motion to dismiss stage.

In contrast to the above cases, here, neither party has attached copies of the works at issue for the court to consider, nor does it seem appropriate to do so at this phase in the case.  Use of the extrinsic test is proper where there are no disputed material facts and the question presented to the court is whether a plaintiff has established substantial similarity as a matter of law.  See Wild, 788 F. Supp. 2d at 1098 ("The extrinsic test can be applied by the Court where there is no factual dispute regarding the content of the competing works at issue in the litigation") (citing Berkic v. Crichton, 761 F.2d at 1292); Campbell v. Walt Disney Co., 718 F. Supp. 2d 1108, 1112 (N.D. Cal. 2010) ("The 'extrinsic test' depends on specific criteria which can be analyzed and decided as a matter of law.").  This case lacks the kind of comprehensive factual record and undisputed facts that would allow the court to apply the "extrinsic test" at this stage, and there is no support for Defendants' argument that doing so is required for the purposes of a motion to dismiss.

The court finds that Plaintiff has alleged sufficient facts to support his claim that Defendants copied "constituent elements" of his original work, and therefore has adequately plead the required components of copyright infringement cause of action.  See Feist, 499 U.S. at 361.  In relevant part, Plaintiff asserts that his Musical and Defendants' allegedly infringing works uniquely portray the story of a young Don Diego on his journey to becoming "Zorro," leading to substantial similarities in the theme and plot.  SAC, ¶¶ 15. 60-68.  Plaintiff further alleges that his Musical and Defendants' works incorporate and emphasize gypsies and flamenco dancing as significant to Zorro's early life when no other authors had previously done so, and that the characters, general mood, and pace of the works are highly similar as a result.  Id.  Finally, Plaintiff alleges that ZPI copied substantial elements of the songs from his Musical and retitled

15

them for its own production.  Id. ¶¶ 63-67.  Taking these assertions as true, Plaintiff has adequately alleged a claim for copyright infringement, and Defendants' Motion to Dismiss is therefore DENIED as to this claim.

### ii.  Declaratory Judgment of Non-Infringement (Claim 2)

A federal district court may render a declaratory judgment pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, where an "actual controversy" exists.  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937).  This "actual controversy" requirement is "coextensive with the 'case or controversy' requirement of Article III of the United States Constitution."  Shloss v. Sweeney, 515 F. Supp. 2d 1068, 1075 (N.D. Cal. 2007).  Thus, the inquiry into whether a declaratory judgment plaintiff has established an "actual controversy" in satisfaction of the DJA and Rule 12(b)(6) merges with the issue of jurisdiction under Rule 12(b)(1), since both inquiries turn on whether the plaintiff has alleged an "actual controversy." See Societe de Conditionnement En Aluminium v. Hunter Eng'g Co., 655 F.2d 938, 943 (9th Cir.1981).  A plaintiff may therefore bring an action for declaratory relief "once the adverse positions [of the parties] have crystallized and the conflict of interests is real and immediate." (internal quotations omitted); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (holding that the relevant question in determining whether issuance of a declaratory judgment is warranted "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality...") (quoting Maryland Cas.Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In the Ninth Circuit, a plaintiff seeking declaratory judgment must show (1) a "real and reasonable" apprehension that he will be subject to liability if he continues to produce the work at issue; and (2) that the apprehension was "caused by the defendant's actions.  Hal Roach, 896 F.2d at 1556 (citing Societe de Conditionnement, 655 F.2d at 944 and International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1211 (7th Cir.1980)).  Courts should apply these principles "with a flexibility that is oriented to the reasonable perceptions of the plaintiff."  See Chesebrough-Pond's,

United States District Court
Northern District of California

Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir.1982). "A plaintiff does not have to begin distribution of the potentially infringing product in order to have a controversy ripe for declaratory judgment adjudication, so long as the plaintiff has completed all preparatory work." Shloss, 515 F. Supp. 2d 106 at 1078 (citing Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 966 (10th Cir.1996)).

Here, Defendants argue that Plaintiff has failed to allege "any ongoing justiciable controversy" because the lawsuits filed by Defendants in Germany were not effective in stopping the productions, and because Plaintiff has not asserted any imminent plans to stage a new production of the Musical in either Germany or the United States. MTD at 17. However, this argument is not compelling in light of the Parties' contentious history, as well as Plaintiff's numerous allegations that Defendants threatened Plaintiff and other third parties with litigation if they produced the Musical. See SAC ¶¶ 35-36; 37-45; 52-59. Multiple legal disputes have already arisen between the Parties in the United States and elsewhere, none of which have fully resolved the issues, and the parties appear willing and likely to continue such disputes going forward should their issues not be resolved. Plaintiff has a completed script that is fully ready for production. In Germany, Plaintiff's efforts to produce the Musical resulted in ZPI filing suit against him. In the United States, Plaintiff alleges that ZPI's continued litigation threats and ongoing assertions of its purported copyright and trademark rights has prevented him from further licensing his Musical to other potential production companies.

Based on these allegations, the court finds that Plaintiff has asserted a "real and reasonable" apprehension that he will be subject to copyright liability if he endeavors to produce his Musical, and that this apprehension is the result of Defendants' actions. See Hal Roach, 896 F.2d at 1556; Societe de Conditionnement, 655 F.2d at 944. Accordingly, the copyright controversy between the Parties is sufficiently definite to proceed and Defendants' Motion to Dismiss is DENIED as to the Second Cause of Action for declaratory judgment.

### iii.    Cancellation of Federal Trademark Registration (Claim 3)

Plaintiff's Third Cause of Action seeks cancellation of six of Defendants' federal trademark registrations[4] on the grounds that the marks "were falsely and fraudulently obtained by ZPI." SAC ¶ 79. Defendants urge the court to dismiss Plaintiff's trademark cancellation claim because it is barred by the statute of limitations and the doctrine of laches. MTD at 17-18.

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. The Lanham Act authorizes trademark cancellation where a party obtained the marks by fraud. Id. §§ 1064(3), 1119; see MIH Allegro BV v. Fang, 2015 WL 12655399, at *8-9 (C.D. Cal. Jan. 12, 2015) (finding a trademark cancellation claim appropriate under theory that it was obtained by fraud). Because the Latham Act does not itself contain a statute of limitations, in the absence of a controlling state statute, the Ninth Circuit has found state fraud claims to be most closely analogous. Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc., 603 F.3d 1133, 1139-40 (9th Cir. 2010) (affirming district court's decision holding that three-year statute of limitations for fraud applies to Lanham Act claims); see Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002); (applying California CCP § 338(d) three-year period for fraud actions); Karl Storz Endoscopy–America, Inc. v. Surgical Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002) (same); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1395 (9th Cir. 1993) (applying Oregon's two-year limitation for fraud); see also Ranch Realty, Inc. v. DC Ranch Realty, LLC, 614 F. Supp. 2d 983, 989 (D. Ariz. 2007). Similarly, for the purposes of laches, courts presume that a claim is time barred if it is not filed within the statute of limitations but also consider whether (a) plaintiff's delay was reasonable, and (b) defendant would suffer prejudice. Jarrow Formulas, 304 F.3d at 838. The statute of limitations for fraud claims in

---

[4] Plaintiff requests cancelation of US. Reg. Nos. 1,524,207; 1,912,515; 1,731,743; 2,296,302; 2,239,219; and, 2.198,254.

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

California is three years. C.C.P. § 338(d).

Here, Plaintiff's trademark cancellation claims are preemptively barred by the applicable three year statute of limitations. The parties do not dispute that in 2002, Plaintiff filed a Petition with the United States Patent and Trademark Office for Cancellation of five of the six trademarks at issue here. Plaintiff voluntarily dismissed these claims pursuant to a "walk-away agreement" that he reached with ZPI as a result of negotiations facilitated by Sony Pictures. SAC ¶ 36. These claims are therefore well beyond the statute of limitations period.

Plaintiff argues that it was ZPI who subsequently violated the "walk-away agreement," requiring Plaintiff to again seek cancellation of the marks, and therefore Defendants are the ones responsible for any delay. However, Plaintiff offers no specific facts regarding that nature, terms, or conditions of the "walk-away agreement," and includes no documentation of any such agreement. In order to toll the statute of limitations – or demonstrate the reasonableness of the delay under the doctrine of laches – Plaintiff must plead specific facts regarding this agreement and its applicability to these claims. Plaintiff has not done so here. Accordingly, Defendants' Motion to Dismiss is GRANTED as to the Third Cause of Action for Cancellation of Federal Trademark Registration. Because it is possible that Plaintiff could allege facts sufficient to support tolling or otherwise demonstrate the reasonableness of the delay, the court will grant Plaintiff leave to amend.

### iv. Tortious Interference with Contract and Business Expectancy (Claim 4) and Violation of California Business & Professions Code § 17200 (Claim 6)

To state a claim for intentional interference with contract and business expectancy a plaintiff must plead the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (*In Bank*).

Defendants argue that this claim is (1) limited to ZIP's alleged interference in Plaintiff's

United States District Court
Northern District of California

contraction relationship with Gallissas, as opposed to other U.S.-based third-parties; and (2) even focusing exclusively on the contract with Gallissas, Plaintiff fails to plead facts in support of any alleged interference with that contract. MTD at 21. With respect to Defendants' alleged interactions with third parties in the United States, the court agrees that Plaintiff's claim fails because Plaintiff does not plead the existence of a valid contract. Plaintiff alleges that Defendants "interfered with his *prospective contracts* by fraudulently representing that [the] Musical infringes upon Defendants' purported intellectual property rights," and by intimidating and threatening third parties with litigation if they worked with Plaintiff, resulting in the loss of these business opportunities. See SAC ¶ 45 (emphasis added). This is insufficient.

In Engineering Network Intern., Inc. v. Lucent Technologies, Inc., the Ninth Circuit held that the absence of a legally enforceable contract was fatal to the plaintiff's claim for intentional interference with contract and business expectancy. 178 F. App'x 721, 722 (9th Cir. 2006). There, the court found that "the parties *were still negotiating* the material terms of the contract," but no actual contract had been formed. Id. (emphasis added). The court concluded that "[i]n view of the absence of a contract, [the plaintiff] failed to raise a material question of fact regarding intentional interference with a contractual relationship." Id. (citing Eugster v. Spokane, 121 Wash. App. 799, 91 P.3d 117, 123 (2004)).

Here, while Plaintiff clearly alleges the Defendants interfered with his *negotiations* and disrupted *prospective* business opportunities and/or contracts, the existence of an actual, valid contract between Plaintiff and a third party is a required element of this particular cause of action.[5] Plaintiff has failed to allege any such contract. Accordingly, claims based on third party business relationships will be dismissed.[6]

---

[5] The court notes that "[t]he tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract." Bear Stearns, 50 Cal. 3d at 1126. However, Plaintiff has not asserted a claim for tortious interference with prospective economic advantage.

[6] Having now limited the scope of this cause of action to the contractual relationship between Plaintiff and his German agent, Gallissas, Defendants argue as an initial matter that this claim

20

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

As to the sufficiency of the allegations concerning Gallissas, however, Defendants' position is unpersuasive. Plaintiff alleges that Defendants met with Gallissas in San Francisco with the intention and purposes of interfering with Plaintiff's contractual business relationship with Gallissas, his licensee. SAC ¶¶ 51-55. Plaintiff alleges that during this meeting, Defendants made false and misleading statements regarding his and ZIP's respective copyright and trademark rights - or lack thereof - in "Zorro," and threatened Gallissas with litigation if it continued producing the Musical. Id. Finally, Plaintiff asserts that through these improper communications and threats, ZIP successfully induced Gallissas to breach its contract with Plaintiff. Id. The court finds these allegations sufficient to state a claim for intentional interference with contract and business expectancy, and is unpersuaded by Defendants' arguments that a higher level of detail is necessary at this stage.

Finally, Defendants contend that even if the claim was sufficiently plead, the alleged communications between ZPI and Gallissas are nevertheless privileged under California Civil Code Section 47(b). MTD at 22. Section 47(b) provides that "communications made in or related to judicial proceedings are absolutely immune from tort liability." Ingrid & Isabel, LLC v. Baby Be Mine, LLC, 70 F. Supp. 3d 1105, 1140 (N.D. Cal. 2014). This privilege is generally considered "absolute" and applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Id. (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990)). California also extends this statutorily granted privilege to pre-litigation communications. See, Sosa v. DIRECTV, Inc., 437 F.3d 923, 936 (9th Cir. 2006) (discussing section 47(b)); accord Rubin v. Green, 4 Cal.4th 1187, 1193-94 (1993); Morales v. Cooperative of Am. Physicians, Inc., 180 F.3d 1060, 1062 (9th Cir. 1999). However,

_____

belongs in Germany and should be dismissed for forum non conveniens. However, the court is not persuaded that this is necessary or proper for the reasons already discussed. Additionally, Defendants are California residents, and Plaintiff alleges that Gertz met with Gallissas in San Francisco in order to induce Gallissas to break its contract with Plaintiff. The court is therefore satisfied that this claim can be appropriately litigated here.

Case No.: 5:15-cv-00771-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATNS' MOTION TO DISMISS

the litigation privilege will *not* protect communication or conduct that is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Sosa, 437 F.3d at 938; accord Modular Arts, Inc. v. Interlam Corp., No. C07-382Z, 2007 WL 2069862, at *3 (W.D. Wash. July 13, 2007).

Here, Defendants argue that because ZPI has been involved in continuous litigation over its rights in "Zorro," its "alleged communications with Gallissas" bear "some relation" to the pending or anticipated litigation involving such rights, and thus fall within the litigation privilege. MTD at 22. While the presumption in favor of this privilege is strong, Defendants fail to actually explain in what way the meeting with Gallissas logically related to ongoing or anticipated litigation. Defendants do not make any claims that the intention of this meeting was to discuss, resolve, or "achieve the objects of" litigation, nor do they explain what role – actual or contemplated – Gallissas has in any such litigation. Rather, Defendants argue that the communication relates to litigation because Gertz threatened to "tie up all of Mr. Cabell's productions in court." See id. Absent more, Defendants have not shown why the communications with Gallissas are entitled to protection under the litigation privilege. Furthermore, taking Plaintiff's allegations as true, the court cannot conclude at this time that such communications were not "an attempt to interfere with the business relationships of a competitor." Sosa, 437 F.3d at 938. Thus, because the facts as alleged could fall under the "sham" exception, the court cannot dismiss this claim.

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED to the extent it is based on Defendants' alleged interference with any of Plaintiff's third-party negotiations and prospective business opportunities, and DENIED without prejudice with respect to Defendants' alleged interference and communications with Gallissas.

California Business & Professions Code § 17200, also known as the Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Because the UCL is framed in the disjunctive, "each prong of the UCL is a separate and distinct theory of

liability" offering "an independent basis for relief." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1127 (9th Cir. 2009). Because the court found that Plaintiff stated a claim for intentional interference with contract and business expectancy, Plaintiff has similarly satisfied the pleading requirements for a UCL claim, because intentional interference would be considered an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

However, unlike a claim for intentional interference with contract and business expectancy, the UCL does not require Plaintiff to show the existence of a valid contract. Accordingly, the court finds that Plaintiff's UCL claim thrives not only with respect to Defendants' communication with Gallissas, but also with respect to the alleged interference with Plaintiff's third party business prospects. The Motion to Dismiss Plaintiff's Sixth Cause of Action for violation of California Business & Professions Code § 17200 is therefore DENIED.

### v. Fraud (Claim 5)

Defendants move to dismiss Plaintiff's Fifth Cause of Action for fraud on the grounds that the SAC fails to plead reliance, and does not satisfy the level of specificity required by Rule 9(b).

To state a claim for fraud under California law, the plaintiff must allege "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." <u>Hasso v. Hapke</u>, 227 Cal. App. 4th 107, 127 (2014) (quoting <u>Service by Medallion, Inc. v. Clorox Co.</u>, 44 Cal. App. 4th 1807, 1816 (1996) (emphasis added); <u>accord</u> <u>Glenn K. Jackson Inc. v. Roe</u>, 273 F.3d 1192, 1201 (9th Cir. 2001) (applying California law). Additionally, it is well settled that fraud-based claims are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985). To that end, there must be "an account of the time, place, and specific content of the false representations

as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007); <u>Spencer v. DHI Mortg. Co.</u>, 642 F.Supp.2d 1153, 1164 (E.D.Cal. 2009).

Here, the basis for Plaintiff's fraud claim appears to be misrepresentations ZPI allegedly made to certain third parties. <u>See</u> SAC ¶ 91. The SAC alleges that Defendants made false statements to Plaintiff's "customers, clients, licensees and prospective business affiliates" with the intention that they "would cease doing business with [Plaintiff] and instead utilize works owned by ZPI." SAC ¶ 93. The SAC further alleges, on information and belief, that these "customers, clients, licensees and prospective business affiliates have relied on the communications from ZPI and/or Gertz, resulting in a diversion of business from Mr. Cabell to ZPI." <u>Id.</u>

However, fraud requires a showing of "justifiable reliance *by the plaintiff*." <u>Hasso</u>, 227 Cal. App. 4th at 127 (emphasis added). The SAC's allegations that relate to reliance pertain only to the purported reliance of unidentified third parties; the SAC lacks any factual allegations that Defendants made a false statement *to* Plaintiff, or that Plaintiff relied on any such statement and suffered damages as a result. <u>See</u> SAC ¶¶ 91-94. Plaintiff's Opposition does not address this deficiency, but rather reiterates that Defendants' "threats [of litigation] were meant to induce these third party production facilities to cancel their contracts with Mr. Cabell." Opp. at 22. While Plaintiff may be entitled to a remedy for harm suffered as a result of Defendants' detrimental communications with these third parties, such a remedy is contemplated by other legal claims. But Plaintiff does not have standing to assert a separate claim for fraud based on allegations that other, unspecified third parties relied on Defendants' purported misstatements. Moreover, even if Plaintiff had alleged sufficient facts to support standing, the pleadings also lack the specificity and particularity required of a fraud claim. <u>See</u> <u>Swartz</u>, 476 F.3d at 764 ("[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'").

In light of these deficiencies, the court finds that Plaintiff has failed to state a claim for

common law fraud, and Defendants' Motion to Dismiss is GRANTED as to the Fifth Cause of Action. While the court is skeptical that amendment could cure the deficiencies discussed above, the court nevertheless will grant Plaintiff leave to amend in order to include the necessary allegations for fraud, if he believes such an amendment is supported by law.

## IV. ORDER

Based on the foregoing, Defendants' Motion to Dismiss (Dkt. No. 49) is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is DENIED on forum non conveniens grounds as to all claims.

2. The Motion is DENIED as to the First Cause of Action for Copyright Infringement.

3. The Motion is DENIED as to the Second Cause of Action for declaratory judgment.

4. The Motion is GRANTED as to the Third Cause of Action for Cancellation of Federal Trademark Registration.

5. As to the Fourth Cause of Action for Tortious Interference with Contract and Business Expectancy, the Motion is GRANTED to the extent it is based on Defendants' alleged interference with Plaintiff's third-party negotiations and prospective business opportunities, and DENIED without prejudice with respect to Defendants' alleged interference with Gallissas.

6. The Motion is GRANTED as to the Fifth Cause of Action for Fraud.

7. The Motion is DENIED as to the Sixth Cause of Action for violation of California Business & Professions Code § 17200.

All claims are dismiss WITH LEAVE TO AMEND. Any amended complaint shall be filed no later than **June 26, 2017**.

**IT IS SO ORDERED.**

Dated: May 30, 2017

_____
EDWARD J. DAVILA
United States District Judge